IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY CRITES<br>432 Dennison Avenue<br>Akron, Ohio, 44312 | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | **COMPLAINT FOR DAMAGES AND REINSTATEMENT** |
| v. | )<br>) | **JURY DEMAND ENDORSED HEREIN** |
| CUYAHOGA VENDING CO, INC.<br>c/o James N. Variglotti, statutory agent<br>14250 S. Industrial Parkway<br>Maple Heights, Ohio 44137 | )<br>)<br>)<br>)<br>) | |
| Defendant | ) | |

Plaintiff, Gregory Crites, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## PARTIES AND VENUE

1. Crites is a resident of the city of Akron, County of Summit, state of Ohio.

2. Cuyahoga Vending, Inc. is a domestic corporation whose principal place of business is located in the city of Maple Heights, county of Cuyahoga, state of Ohio.

## PERSONAL JURISDICTION.

3. Cuyahoga Vending hires citizens of the state of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Cuyahoga Vending comports with due process.

4. Goodman worked for Cuyahoga Vending in this judicial district and was terminated from his employment with Cuyahoga Vending in this district.

## SUBJECT MATTER JURISDICTION AND VENUE.

5. This Court has jurisdiction over the subject matter of this action under the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. § 216(b); and 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Crites' state law claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA"); the Ohio Constitution; and Ohio R.C. § 4112.02(A) because those claims derive from a common nucleus of operative facts.

7. Venue is proper in this District because Cuyahoga Vending does a sizeable portion of their business in this District, and the wrongs herein alleged occurred in this District.

## COVERAGE.

8. At all times referenced herein, Cuyahoga Vending formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

9. At all times referenced herein, Cuyahoga Vending was Crites' "employer" within the meaning of Section 3(d) of FLSA, 29 U.S.C. § 203(d); Section34a, Article II, of the Ohio Constitution and the OMWFSA; and Ohio R.C. § 4112.01(A)(2).

10. At all times referenced herein, Cuyahoga Vending was a private employer with fewer than 500 employees, and was a covered employer under the Families First Coronavirus Response Act ("FFCRA").

## STATEMENT OF FACTS.

### (Facts Relating To Crites Employment And Wrongful Termination).

11. Crites is a former employee of Cuyahoga Vending.

12. Crites was hired by Cuyahoga Vending on or about August 24, 2020.

13. Crites worked for Cuyahoga Vending as "Route Attendant."

14. As a Route Attendant, Crites was responsible for the delivery of such items as soft drinks, bakery products, specialty foods, snack items to Cuyahoga Vending's customers; filling vending machines; collecting stale, rejected or unsold merchandise; collecting money from machines and refills bill and coin changers; performing minor repairs and adjustments to vending machines as needed; and creating and maintaining certain records relating to this work.

15. Crites' job duties frequently required him to use his hands and to bend his wrists.

16. After working for Defendant for several months, Crites began to experience pain in his wrist.

17. Prior to November 18, 2020, Crites had not been absent from work.

18. On or around November 18, 2020, Crites was diagnosed with severe carpal tunnel syndrome, which caused numbness, tingling, and weakness in his hand.

19. Crites required surgery to correct his carpal tunnel syndrome.

20. Crites' physicians scheduled him for corrective surgery, to take place on or about January 5, 2021, to alleviate the symptoms of Crites' carpal tunnel syndrome.

21. Crites' physicians recommended that Crites be provided with accommodations at work for his carpal tunnel syndrome, to include being assigned "light duty."

22. Crties' physicians advised Crites not to lift more than eight pounds ("Medical Restrictions").

23. Crites' carpal tunnel syndrome was a physical impairment.

24. Crites' carpal tunnel syndrome substantially limited Crites's ability to hold, grab, lift, push, and pull.

25. Crites' carpal tunnel syndrome was a "disability" as that term is defined by Ohio R.C. § 4112.01(A)(13).

26. Shortly after being diagnosed with carpal tunnel syndrome, Crites advised his Branch Manager at Cuyahoga Vending, Ryan McDonald, of his carpal tunnel syndrome diagnosis; need for light duty and Medical Restriction; and upcoming January 5, 2021 surgery.

27. Crites told McDonald that he believed that the nature of his work was "partly" to blame for his carpal tunnel syndrome.

28. As a result of Crites' disclosure to McDonald concerning his carpal tunnel syndrome, Cuyahoga Vending was aware that Crites suffered from a disability and/or a physical impairment.

29. As a result of Crites' disclosure to McDonald concerning his carpal tunnel syndrome, Cuyahoga Vending regarded Crites as suffering from a disability and/or a physical impairment.

30. McDonald responded to Crites' news of his disability with anger, telling Crites "you are not off to great start" at Cuyahoga Vending and complaining that he was now going to "have to find someone to cover."

31. Defendants did not provide Crites with any accommodation for his carpal tunnel syndrome.

32. Defendants did not honor Crites' Medical Restrictions.

33. Defendants did not engage in an interactive process to identify reasonable accommodations that would have alleviated Crites symptoms while allowing him to perform his job.

34. Allowing Crites to work light duty and/or honoring his Medical Restrictions would not have imposed an undue burden on Cuyahoga Vending.

35. Cuyahoga Vending did not determine if Crite's accommodation request would cause an undue hardship.

36. Cuyahoga Vending has no contemporaneously created documents reflecting any effort to determine if Crites' accommodation request would cause an undue hardship.

37. On or about November 27, 2020, Crites developed symptoms consistent with Covid 19.

38. Crites' symptoms worsened between November 27, 2020 and November 30, 2020.

39. Crites sought medical treatment for his Covid 19 symptoms on November 30, 2020.

40. Crites' physician scheduled Crites for a Covid 19 test the following day, December 1, 2020 and advised him to quarantine at home.

41. Crites took a Covid 19 test on December 1, 2020.

42. Crites received a negative test result on December 3, 2020 and returned to work.

43. Upon Crites' return to work, McDonald confronted Crites and yelled and screamed at him for being absent from work.

44. As a result of his Covid 19 symptoms, Crites requested that Cuyahoga Vending provide him with paid leave under the Families First Coronavirus Relief Act ("FFCRA").

45. Pursuant to the FFCRA, Crites was entitled to up to two weeks (up to 80 hours) of paid sick leave at his regular rate of pay because he was unable to work because he was quarantined and/or experiencing COVID-19 symptoms and seeking a medical diagnosis. *See* 29 U.S.C §826.20(a)(1)(ii) & (iii).

46. Initially, Cuyahoga Vending refused to provide Crites with paid leave under the FFCRA.

47. After Crites continued to complaint about his right to paid leave under the FFCRA, Cuyahoga Vending relented and paid Crites for the period of time he was on leave.

48. On or about December 8, 2020, Crites was injured when he twisted his ankle while was carrying a tray of food from a refrigerator to his truck.

49. Crites reported his twisted ankle to McDonald and continued working for the rest of his shift.

50. At the end of Crites' shift, McDonald angrily stated to Crites "its always something with you," before instructing Crites to have his ankle "looked at" and advising Crites that he would need to take a drug test.

51. Crites took and passed the drug test.

52. Cites sought medical care for his ankle, was diagnosed with a sprain, and given a brace to wear.

53. Subsequently, Crites contacted "Becky" (last name unknown) in Cuyahoga Vending's Human Resources office to learn how he could go about filing a worker's compensation claim for his ankle injury.

54. Becky told Crites to have his medical bill either billed to his private insurance or "through Worker's Comp."

55. Subsequently, Crites learned that his doctors office had contacted Becky and was told not to submit Crites' medical bills to Workers Compensation.

56. Upon learning that the medical bills for his ankle injury had not been taken care of, Crites asked McDonald how he could get Cuyahoga Vending to pay his medical bill.

57. McDonald told Crites that he did not know, and that he would have to "get back to (Crites) about that."

58. McDonald never followed up with Crites about his unpaid medical bill.

59. On Sunday, December 20, 2020, Crites notified McDonald that he would be absent from work on Monday, December 21, 2020.

60. McDonald did not respond to Crite's text message until the following day, December 21, 2020, when McDonald tried to call Crites.

61. Crites was unable to answer McDonald's call but immediately sent him a text message stating he would call McDonald back.

62. McDonald responded to Crites by sending him a text message instructing him to report to work the following day before his usual start time with his uniforms and keys.

63. Crites responded to McDonald by asking if he was being terminated.

64. McDonald confirmed that Crites was being terminated, stating "it just isn't going to work out."

65. McDonald did not provide Crites with any specific reason for his termination.

66. At all times referenced herein, Defendants maintained a progressive discipline policy.

67. Crites had never received any oral discipline prior to his termination.

68. Crites had never received any written discipline prior to his termination.

69. At all times referenced herein, Defendants maintained a points-based attendance policy. ("Attendance Policy").

70. Pursuant to the Attendance Policy, "employees receive a total of ten (10) occurrences top use during a rolling twelve (12) months.

71. Pursuant to the Attendance Policy, escalating levels of discipline are given to employees as they accrue greater attendance points.

72. Pursuant to the Attendance Policy, being late or leaving early will result in a half point being assessed against the employee.

73. Pursuant to the Attendance Policy, a full day's absence will result in a one point being assessed against the employee.

74. Pursuant to the Attendance Policy, a consecutive full day absences will be counted as one and, and only one point assessed, if the employees provides medical documentation supporting their absence.

75. Pursuant to the Attendance Policy, an employee will not be terminated for a "no-call, no show" until they "are absent for three (3) days without notification."

76. While Crites was due to be assessed a full point for his absence from work on December 21, 2020, he had not accrued a sufficient number of attendance points to result in his termination.

77. Crites had reported his absence on December 21, 2020 in advance to McDonald and was not a "no call, no show" for three or more consecutive days.

78. Crites never received a first written warning for his attendance, which is required when an employee accrues three or more points.

79. Crites never received a second written warning for his attendance, which is required when an employee accrues six or more points.

80. Crites never received a second written warning for his attendance, which is required when an employee accrues nine or more points.

81. Alternatively, Cuyahoga Vending terminated McDonald for his attendance by improperly counting the days he was out on FFCRA leave against his total attendance points.

82. Cuyahoga Vending terminated Crites because of his disability and/or physical impairment, carpal tunnel syndrome.

8

83. Cuyahoga Vending terminated Crites because he took FFCRA leave.

84. Cuyahoga Vending terminated Crites because he took FFCRA leave.

85. Cuyahoga Vending terminated Crites because he advocated for his right to receive paid leave under the FFCRA.

86. Cuyahoga Vending terminated Crites because he had attempted to and was in the process of attempting to file a claim for Workers Compensation benefits.

(**Facts Relating To Crites' Claims Under The FLSA And The OMFWSA**).

87. At all times referenced herein, Crites was paid a base hourly wage of $13.38 per hour plus commissions.

88. At all times referenced herein, Crites was paid weekly.

89. At all times referenced herein, the commissions earned by Crites were far less than half of his total earnings.

90. During the course of Crites employment, he earned a total of $7,685.00 in regular, hourly wages and only $3,742.00 in commissions.

91. As a result of Crite's compensation being primarily through the payment of hourly wages, he did not qualify for the "inside sales" or "outside sales" exemptions to the FLSA and the OMFWSA.

92. As a result of Crite's compensation being primarily through the payment of hourly wages, Crites was non-exempt under the FLSA and OMFWSA and entitled to overtime.

93. Throughout Crites' employment, he frequently worked in excess of forty (40) hours per week.

94. Crites hours of work should have been recorded by a computer swipe.

95. Throughout Crites employment, Cuyahoga Vending would only pay him hourly wages for up to forty (40) hours.

96. Crites was not paid any wages, including overtime, for any hours that he worked in excess of forty (40) per week.

97. As a direct and proximate result of Defendants' conduct, as described above, Crites suffered and will continue to suffer damages.

## COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA, 29 U.S.C. § 207.

98. Crites restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

99. The FLSA requires each covered employer such as Cuyahoga Vending to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

100. Crites was not exempt from the requirement to be paid overtime.

101. Crites was entitled to paid for all hours worked.

102. Crites was entitled to paid overtime for all hours worked over forty (40) in a single week.

103. As a result of Cuyahoga Vending's failure to properly compensate Crites at a rate not less than 1.5 times his regular rate of pay for all work performed in excess of 40 hours in a work week, Cuyahoga Vending violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

104. In the course of perpetrating these unlawful practices, Cuyahoga Vending also willfully failed to keep accurate records of all hours worked by Crites.

105. Cuyahoga Vending's failure and refusal to pay Crites overtime wages for all overtime hours worked was willful, intentional, and not in good faith.

106. Crites is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

### COUNT II: VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, Ohio R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.

107. Crites restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

108. Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

109. Cuyahoga Vending failed to pay Crites overtime for any hours he worked in excess of 40 per week.

110. In denying Vogelsong overtime compensation, Defendant violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

111. As a direct and proximate result of Defendant's unlawful conduct, Vogelsong has suffered and will continue to suffer a loss of income and other damages.

112. Having violated the OMFWSA, Defendant is liable to Vogelsong pursuant to Ohio R.C. § 4111.10 for the full amount of his unpaid overtime and for costs and reasonable attorneys' fees. Additionally, Defendant is liable to Vogelsong for an amount equal to twice his unpaid wages. Ohio R.C. § 4111.14(J).

## COUNT III: UNLAWFUL RETALIATORY TERMINATION IN VIOLATION OF THE FFCRA/FLSA.

113. Crites restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

114. Section 5104 of the FFCRA provides that it "shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who (1) takes emergency paid sick leave... and (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to the use of emergency paid sick leave (including a proceeding that seeks enforcement of [the emergency paid sick leave provisions of the FFCRA]), or has testified or is about to testify in any such proceeding."

115. Crites took FFCRA leave.

116. Crite's complaints concerning his reasonable belief that he was entitled to pay while on FFCRA leave qualified as "fil[ing] a complaint" within the meaning of the FFCRA. See *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011); *Moore v. Freeman*, 355 F.3d 558, 562-63 (6th Cir. 2004).

117. Two to three weeks after Crite's engaged in protected activity under the FFCRA, Cuyahoga Vending terminated his employment, in contravention of its own policies.

118. Upon information and belief, Cuyahoga Vending assessed the days Crites was on FFCRA leave against Crites.

119. Cuyahoga Vending terminated Crites in retaliation for his engaging in protected activity under the FFCRA.

120. In terminating Crites, Cuyahoga Vending willfully violated section 5104 of the Emergency Paid Sick Leave Act ("EPSLA").

121. Cuyahoga Vending's willful violation of the FFCRA and the EPSLA constitutes a violation of the FLSA, 29 U.S.C. §215(a)(3)

122. There is a casual link between the adverse actions and the employment actions herein, including the termination of Crites.

123. Crites is entitled to all legal and equitable remedies available for violations of the FLSA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, emotional distress damages, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the FLSA.

## COUNT IV: DISABILITY DISCRIMINATION.

124. Crites restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

125. Crites suffered from carpal tunnel syndrome, a disability and/or physical impairment.

126. Cuyahoga Vending was aware that Crites suffered from an actual disability or physical impairment, and/or perceived Crites to suffer from a disability or physical impairment.

127. Pursuant to Ohio R.C. § 4112.02(A), it shall be unlawful "for any employer, because of the …disability…of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

128. Cuyahoga Vending violated Ohio R.C. § 4112.02(A) when it terminated Crites because of his disability.

129. In *Johnson v. Cleveland City School Dist.*, 2011-Ohio-2778, ¶ 60 (8th Dist. Cuyahoga), the Eighth District Court of Appeals explained that "[a] plaintiff who has established that he is disabled for R.C. 4112.02 purposes may further establish a discrimination claim by showing

13

that the employer has declined to make a reasonable accommodation to known disabilities if such accommodation would not cause undue hardship on the employer."

130. Cuyahoga Vending failed to engage in the interactive process of determining whether Crites needed an accommodation.

131. Cuyahoga Vending failed to provide an accommodation to Crites

132. Cuyahoga Vending terminated Crites following his Accommodation Request, and only two weeks before

133. Cuyahoga Vending violated Ohio R.C. § 4112.02 by failing to provide Crites a reasonable accommodation.

134. As a result of Cuyahoga Vending's discrimination against Crites in violation of Ohio R.C. § 4112.02(A), Crites has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

135. In its discriminatory actions as alleged above, Defendants acted with malice or reckless indifference to the rights of Crites, thereby entitling Crites to an award of punitive damages.

136. To remedy the violations of the rights of Crites secured by Ohio R.C. § 4112.02(A), Crites requests that the Court award his the relief demanded below.

**COUNT V: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

137. Crites restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

138. In *Sutton v. Tomco Machining Inc.*, the Supreme Court of Ohio held that R.C. §4123.90 expresses a clear public policy against the retaliatory firing of injured employees, including those who are fired before filing a Workers' Compensation claim.

139. Ohio recognizes a common law (non-statutory) tort claim for wrongful discharge in violation of public policy when an employee is fired after reporting a workplace injury to his employer but before initiating a Workers' Compensation claim.

140. Cuyahoga Vending violated public policy by discriminating against Crites based on his intent to file a Workers' Compensation claim.

141. As a direct and proximate cause of Cuyahoga Vending's conduct, Crites has suffered and will continue to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Gregory Crites requests judgment in his favor against Defendant Cuyahoga Vending, Co, Inc. containing the following relief:

(a) Adjudicating and declaring that Cuyahoga Vending's conduct as set forth herein and above is in violation of the FLSA;

(b) An order directing Defendants to place Crites in the position he would have occupied but for Defendants discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Crites;

(c) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Crites for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Crites for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(e) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Crites for harm to his professional and personal reputation and loss of career fulfillment;

(f) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Cuyahoga Vending for its intentional, negligent, willful, wanton, and/or malicious conduct;

(g) Awarding pre-and post-judgment interest and court costs as further allowed by law;

(h) Awarding Crites reasonable attorneys' fees and all costs of this action, to be paid by Cuyahoga Vending, as allowed by law; and

(i) Awarding such other and further relief that this Court deems necessary and proper.

                                          Respectfully submitted,

                                          */s/ Chris P. Wido*
                                          Chris P. Wido (0090441) (Trial Counsel)
                                          Samuel B. Robb (0099035)
                                          **The Spitz Law Firm, LLC**
                                          25200 Chagrin Boulevard, Suite 200
                                          Beachwood, OH 44122
                                          Phone: (216) 291-4744
                                          Fax:    (216) 291-5744
                                          Email: chris.wido@spitzlawfirm.com
                                                       sam.robb@spitzlawfirm.com

                                          *Attorneys For Plaintiff Gregory Crites*

## **JURY DEMAND**

Plaintiff Billy Crites demands a trial by jury by the maximum number of jurors permitted.

> */s/ Chris P. Wido*
> Chris P. Wido (0090441)
> **The Spitz Law Firm, LLC**